# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
October 14, 2020

Lyle W. Cayce
Clerk

FILED
OCT 16 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

No. 20-50793

MI FAMILIA VOTA; TEXAS STATE CONFERENCE OF THE
NAACP; GUADALUPE TORRES,

        *Plaintiffs—Appellants,*

versus

GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS; RUTH
HUGHS, TEXAS SECRETARY OF STATE,

        *Defendants—Appellees.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-830 -JKP

Before OWEN, *Chief Judge,* and DAVIS and SOUTHWICK, *Circuit Judges.*

JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED IN PART and REVERSED IN PART,

No. 20-50793

and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 14, 2020
Lyle W. Cayce
Clerk

No. 20-50793

MI FAMILIA VOTA; TEXAS STATE CONFERENCE OF THE
NAACP; GUADALUPE TORRES,

                              *Plaintiffs—Appellants*,

versus

GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS; RUTH
HUGHS, TEXAS SECRETARY OF STATE,

                              *Defendants—Appellees.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-830

Before OWEN, *Chief Judge,* and DAVIS and SOUTHWICK, *Circuit Judges.*
PRISCILLA R. OWEN, *Chief Judge*:

    Mi Familia Vota, the Texas State Conference of the NAACP (NAACP), and Guadalupe Torres (collectively the Plaintiffs) appeal the dismissal of their claims challenging certain Texas voting procedures during the COVID-19 pandemic. We affirm the judgment of the district court in part, reverse the judgment with respect to the Voting Rights Act claim, and remand that claim.

No. 20-50793

# I

Texas officials have taken steps to mitigate the risks associated with the COVID-19 pandemic that voters may encounter. Among these are advisories from the Secretary of State[1] and an Executive Order issued by Texas Governor Greg Abbott.[2]

The Secretary of State's office issued an advisory urging poll workers to wear face masks; recommending the use of signs to urge voters to wear face masks while at the polls; advising how to use markings or tape to facilitate social distancing; advising how to disinfect electronic voting equipment; suggesting that polling locations provide styluses or swabs or pencils with erasers or coffee stirrers for voters to use instead of touching electronic voting devices; and explaining that if a poll worker could not identify a masked voter, the worker could ask the voter to lower the mask briefly to facilitate identification. Other advice was offered concerning efforts that could and should be taken to mitigate exposure to and spread of COVID-19.

In July 2020, Governor Abbott issued Executive Order GA-29. That order expressed his views that

- "as Texas reopens in the midst of COVID-19, increased spread is to be expected, and the key to controlling the spread and keeping Texans safe is for all people to consistently follow good hygiene and social-distancing practices,"
- "due to recent substantial increases in COVID-19 positive cases, and increases in the COVID-19 positivity rate and

---

[1] *See, e.g.*, Tex. Sec'y of State, Election Advisory No. 2020-19 (June 18, 2020); Tex. Sec'y of State, Election Advisory No. 2020-14 (Apr. 6, 2020).

[2] Executive Order GA-29 (July 2, 2020).

No. 20-50793

> hospitalizations resulting from COVID-19, further measures are needed to achieve the least restrictive means for reducing the growing spread of COVID-19, and to avoid a need for more extreme measures,"

- "given the current status of COVD-19 in Texas, requiring the use of face coverings is a targeted response that can combat the threat to public health using the least restrictive means, and if people follow this requirement, more extreme measures may be avoided," and

- "wearing a face covering is important not only to protect oneself, but also to avoid unknowingly harming fellow Texans, especially given that many people who go into public may have COVID-19 without knowing it because they have no symptoms."[3]

That Executive Order, which went into effect July 3, 2020, provided:

> Every person in Texas shall wear a face covering over the nose and mouth when inside a commercial entity or other building or space open to the public, or when in an outdoor public space, wherever it is not feasible to maintain six feet of social distancing from another person not in the same household.[4]

Failure to wear a mask under these conditions is punishable by a fine, but there are eleven enumerated exceptions or exemptions, including children younger than ten, those with medical conditions or disabilities, while eating or drinking or while seated at a restaurant to eat or drink, while engaging in exercise outdoors and maintaining social distancing, while voting

---

[3] *Id.*

[4] *Id.*

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 6 of 19
Case: 20-50793   Document: 00515605296   Page: 4   Date Filed: 10/16/2020

No. 20-50793

or assisting in the voting process, and while engaging in religious worship, "though a face covering is strongly recommended."[5]

The Plaintiffs filed suit in July, after this Executive Order issued. They allege that Black and Latino communities have been disproportionately impacted by COVID-19 because these communities have experienced higher infection, hospitalization, and death rates. They assert that Texas's policies and laws, "individually and cumulatively, operate to deny voters the right to vote in a safe, free, fair, and accessible election." Plaintiffs posit that long lines, the use of electronic voting devices rather than paper ballots, limited curbside voting, and the permissiveness of mask-wearing at polling locations present substantial health risks that create fear of voting and therefore infringe upon the right to vote. The Plaintiffs asserted causes of action under the Fourteenth Amendment's Due Process and Equal Protection Clauses, the First Amendment, the Fifteenth Amendment, and section Two of the Voting Rights Act.

Plaintiffs seek robust judicial involvement in Texas's elections, requesting an injunction ordering that Governor Abbott and Secretary of State Hughs take specific, affirmative actions, identified in the prayer for relief in their Complaint, which we quote in its entirety:

> a. Order Defendants to modify in-person voting procedures during the early voting period and on Election Day to ensure that polling sites are safe and of low risk to the health of all registered voters, and specifically order that Defendants:
>
> i. Extend the period of early voting to begin on October 5, 2020.
>
> ii. Require voters, poll-workers, persons assisting voters, and any other person at a polling site to wear a mask,

---

[5] *Id.*

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 7 of 19
Case: 20-50793   Document: 00515605296   Page: 5   Date Filed: 10/16/2020

No. 20-50793

including providing masks to persons who do not already have one, with exceptions only for individuals who cannot wear masks due to a disability;

iii. Allow counties to offer extended, temporary, and/or mobile early voting locations with flexible hours and days.

iv. Suspend the requirement that curbside voters must qualify as having a disability or, alternatively, order that any voter may identify as "disabled" due to the threat that the coronavirus poses to his or her health and life, for the purpose of being found eligible to vote curbside.

v. Open additional polling places and provide enough voting booths and poll workers at each polling place to ensure that voters are not required to wait more than twenty minutes to vote, to minimize coronavirus transmission.

vi. Staff all polling places with sufficient number of poll workers to keep voter lines to less than 20 minutes, including by actively recruiting new poll workers who are not at high risk for serious illness due to COVID-19.

vii. Prohibit the closure of polling places currently scheduled to be available on Election Day. Should a polling place need to be closed or moved in order to meet health and safety requirements, require that a new polling place be made available within the same voting precinct.

viii. In counties that use electronic voting machines, including counties that participate in the Countywide Polling place Program, make available sufficient numbers of both paper ballots and electronic voting machines so that voters have the option of voting by hand-marking a paper ballot or by voting on the electronic voting machine, to minimize the risk of coronavirus transmission.

ix. Revise voter identification requirements to allow voters to show identification without requiring poll workers to physically handle identification or documentation,

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 8 of 19
Case: 20-50793   Document: 00515605296   Page: 6   Date Filed: 10/16/2020

No. 20-50793

apply the natural disaster exception to the pandemic, and allow voters to sign affidavits regarding the natural disaster exception at the polling place.

x. Ensure that poll workers are given protective gear, including masks and gloves, in sufficient quantity to allow poll workers to change protective gear frequently. Provide poll workers with ample opportunity to wash their hands.

b. Order Defendants to enable counties that need to revise election policies in order to protect voters' health to do so, provided that the proposed revisions do not violate any relief ordered by this Court.

c. Order Defendants to rescind or modify any voting practice or procedure deemed by this Court to unlawfully discriminate against Black, Latino, or other underserved voters on the basis of a protected characteristic, to eliminate such discrimination.

d. Order that all such relief be extended until there are no existing cases of coronavirus in the state of Texas; or until there is a vaccine freely and readily available to all Texans, whichever comes sooner.

In their motion for a preliminary injunction, the Plaintiffs made clear that the bases for the request for injunctive relief were only the First Amendment and the Due Process Clause of the Fourteenth Amendment. They explained that "[a]lthough Plaintiffs' complaint also alleges violations of the Equal Protection Clause, Fifteenth Amendment, and Section 2 of the Voting Rights Act based on race or ethnicity, Compl. ¶¶ 202-07, those claims do not form the basis of this motion."

In their brief before this court, the Plaintiffs have abandoned their request that early voting be ordered to begin on October 5, 2020, and have narrowed their challenge to Executive Order GA-29 and four sections of the Texas Election Code:

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 9 of 19
Case: 20-50793      Document: 00515605296      Page: 7      Date Filed: 10/16/2020

No. 20-50793

- Executive Order GA-29, requiring masks to be worn in public places but exempting voters and poll workers.

- Texas Election Code section 64.009, permitting voters who are "physically unable to enter" polling locations to vote curbside.

- Texas Election Code section 43.007, permitting certain counties to participate in Texas's Countywide Polling Place Program if those counties meet particular criteria, including the use of electronic voting machines, which means that those counties do not provide paper ballots.

- Texas Election Code sections 85.062-85.063, concerning the number and location of polling places during early voting.

The district court granted the State's motion to dismiss, holding that the case presented non-justiciable political questions. Governor Abbott and Secretary Hughs maintain that the dismissal was appropriate on other grounds as well, including sovereign immunity and lack of standing. We review all of these issues de novo.

## II

The Supreme Court's most recent decision addressing whether an issue constituted a political question is *Rucho v. Common Cause*, in which the Court held that claims of excessive partisanship in districting are not justiciable.[6] In *Rucho*, legislatures in two states had enacted congressional redistricting plans that were "highly partisan, by any measure."[7] The Supreme Court framed the issue before it as "whether there is an

---

[6] 139 S. Ct. 2484, 2491 (2019).

[7] *Id.* at 2491.

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 10 of 19
Case: 20-50793      Document: 00515605296     Page: 8     Date Filed: 10/16/2020

No. 20-50793

'appropriate role for the Federal Judiciary' in remedying the problem of partisan gerrymandering—whether such claims are claims of *legal* right, resolvable according to *legal* principles, or political questions that must find their resolution elsewhere."[8] The Court concluded that partisan gerrymandering claims constitute political questions because they "lack 'judicially discoverable and manageable standards for resolving [them].'"[9] The Court explained that "[f]ederal judges have no license to reallocate political power between the two major political parties, with no plausible grant of authority in the Constitution, and no legal standards to limit and direct their decisions."[10] The Court emphasized that "'[j]udicial action must be governed by standard, by rule,' and must be 'principled, rational, and based upon reasoned distinctions' found in the Constitution or laws."[11] The *Rucho* decision strongly indicates that, by contrast, race discrimination and Voting Rights Act claims, like those asserted by the Plaintiffs, do not present political questions.

In *Rucho*, the Supreme Court recognized that "[i]n two areas—one-person, one-vote and racial gerrymandering—our cases have held that there is a role for the courts with respect to at least some issues that could arise from a State's drawing of congressional districts."[12] The *Rucho* decision recognized that "[l]aws that explicitly discriminate on the basis of race, as well as those that are race neutral on their face but are unexplainable on

---

[8] *Id.* at 2494.

[9] *Id.*

[10] *Id.* at 2507.

[11] *Id.* (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 296-97 (2004) (plurality opinion)).

[12] *Id.* at 2495-96.

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 11 of 19
Case: 20-50793      Document: 00515605296      Page: 9      Date Filed: 10/16/2020

No. 20-50793

grounds other than race, are of course presumptively invalid."[13] The Court recounted that it had applied those principles in "concluding that a challenge to an 'uncouth twenty-eight sided' municipal boundary line that excluded black voters from city elections stated a constitutional claim."[14] Well-established standards exist and have been applied in cases of race discrimination but not to partisan gerrymandering, *Rucho* noted. "[O]ur country's long and persistent history of racial discrimination in voting—as well as our Fourteenth Amendment jurisprudence ... has reserved the strictest scrutiny for discrimination on the basis of race."[15]

Our court has set forth the standards that govern a discriminatory effect claim under section 2 of the Voting Rights Act:

> [1] [T]he challenged standard, practice, or procedure must impose a discriminatory burden on members of a protected class, meaning that members of the protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice, [and]
>
> [2] [T]hat burden must in part be caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class.[16]

We conclude that the Plaintiffs' racial discrimination and Voting Rights Act claims do not present political questions. We do not consider whether the Plaintiffs' remaining claims constitute political questions

---

[13] *Id.* at 2496.

[14] *Id.*

[15] *Id.* at 2502.

[16] *Veasey v. Abbott*, 830 F.3d 216, 244 (5th Cir. 2016).

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 12 of 19
Case: 20-50793   Document: 00515605296   Page: 10   Date Filed: 10/16/2020

No. 20-50793

because all of their claims were properly dismissed on other grounds.

### III

Governor Abbott and Secretary Hughs assert sovereign immunity based on the Eleventh Amendment because a suit against a state official in her official capacity is essentially a suit against the State. However, the Supreme Court's decision in *Ex parte Young*[17] allows injunctive or declaratory relief against a state official in her official capacity, provided the official has a sufficient "connection" with the enforcement of an allegedly unconstitutional law.[18]

We first consider the claims other than those based on the Voting Rights Act and conclude that the Governor does not have authority to enforce, or a role to play in enforcing, the Election Code provisions or the executive order at issue. The Governor of Texas has no connection, statutory or otherwise, to the enforcement of sections 64.009, 43.007, 85.062, or 85.063 of the Texas Election Code.

Governor Abbott promulgated Executive Order GA-29. But the statutory authority under Texas Government Code § 418.012 to issue, amend or rescind an Executive Order[19] "is not the power to enforce it," as

---

[17] 209 U.S. 123, 157 (1908) ("In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.").

[18] *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020).

[19] TEX. GOV. CODE § 418.012 ("Under this chapter, the governor may issue executive orders, proclamations, and regulations and amend or rescind them. Executive orders, proclamations, and regulations have the force and effect of law.").

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 13 of 19
Case: 20-50793   Document: 00515605296   Page: 11   Date Filed: 10/16/2020

No. 20-50793

this court explained in *In re Abbott*.[20] For example, were a court to conclude that the exclusion from the mask requirement in Executive Order GA-29 for voters and poll workers was unconstitutional, the Governor would have no authority to fine those who refused to wear a mask while in polling places. Enforcement actions would be undertaken by local authorities. There is no suggestion in any statutes or regulations that Governor Abbott has authority to enforce or would play a role in enforcing the executive order at issue.[21] The Secretary of State of Texas similarly has no connection to the enforcement of Executive Order GA-29, or Texas Election Code §§ 85.062-85.063.

The Secretary of State's connection to Texas Election Code § 43.007, however, requires more detailed analysis. Section 43.007 requires counties to use electronic voting devices rather than paper ballots in order to be eligible to participate in Texas's Countywide Polling Place Program.[22] The Secretary of State is required by Texas Election Code § 31.014 to provide standards for certifying electronic devices and may exclude counties whose electronic voting devices do not meet certain standards from the Program. Section 31.014 references section 43.007 multiple times. One relevant subsection provides, in part, that the Secretary

> shall adopt rules that require a device described by this section used during the early voting period or under the countywide

---

[20] 956 F.3d at 709.

[21] *See Morris v. Livingston*, 739 F.3d 749, 746 (5th Cir. 2014) ("Section 501.063 does not specially task Governor Perry with its enforcement, or suggest that he will play any role at all in its enforcement.").

[22] TEX. ELECTION CODE § 43.007(d)(4) ("The secretary of state shall select to participate in the program each county that: . . . uses direct recording electronic voting machines . . . .").

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 14 of 19
Case: 20-50793      Document: 00515605296     Page: 12     Date Filed: 10/16/2020

No. 20-50793

polling place program under Section 43.007 to update data in real time. If a county uses a device that does not comply with the rule in two consecutive general elections for state and county officers, the secretary of state shall assess a noncompliance fee. The noncompliance fee shall be set at an amount determined by secretary of state rule.[23]

But the Plaintiffs' claim regarding section 43.007 is based on its prohibition of the use of paper ballots for those counties participating in the Countywide Polling Place Program. If a court were to conclude that electronic voting as the exclusive means of voting was unconstitutional as applied to the Plaintiffs, the court could order the Secretary not to enforce that requirement. But that still would not *require* counties who currently are participating in the Countywide Polling Place Program to print and use paper ballots. The Secretary is not responsible for printing or distributing ballots.[24] That responsibility falls on local officials. It would remain their choice as to whether to incur the expense of printing, distributing and counting paper ballots instead of utilizing the electronic devices they already have in place.

Directing the Secretary not to enforce the electronic-voting-devices-only provision in section 43.007 would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State "is not a proper defendant."[25] Although a court can enjoin state officials from enforcing statutes, such an injunction must be directed to those who have the authority to enforce those statutes. In the present case, that would be county or other local officials. No

---

[23] TEX. ELECTION CODE § 31.014(c).

[24] *See* TEX. ELECTION CODE §§ 52.002, 31.043; *see also In re Cercone*, 323 S.W.3d 293, 294 (Tex. App. 2010) (pet. denied) (recognizing, in a suit regarding an election in Dallas County, that the "Elections Administrator for Dallas County ... is responsible for printing and mailing the general election ballots").

[25] *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (quoting *Morris*, 739 F.3d at 746).

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 15 of 19
Case: 20-50793   Document: 00515605296   Page: 13   Date Filed: 10/16/2020

No. 20-50793

county or local official is a party to the current suit and cannot be enjoined in this suit to print and use paper ballots.

Accordingly, with the exception of the Voting Rights Act claim, the Eleventh Amendment bars all the claims against Governor Abbott and Secretary Hughs. There is no sovereign immunity with respect to the Voting Rights Act claims. Our court has held that the Voting Rights Act, "which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity."[26]

## IV

Much of the relief sought by the Plaintiffs to remedy the alleged Voting Rights Act injuries and the injuries from alleged constitutional violations (were they not barred by sovereign immunity) is beyond the power of a court to grant. It is one thing for a court to strike down a law that violates the Voting Rights Act or the Constitution and to enjoin a state official from enforcing it. It is entirely another matter for a court to order an executive performing executive functions, or an executive performing essentially legislative functions, to promulgate directives mandated by the court. Of course, federal courts may draw redistricting maps in certain limited circumstances,[27] but that narrow exception does not provide authority for courts to order state officials to promulgate legislation, regulations or executive orders. Even in redistricting cases, the "primary locus of responsibility" for promulgating legislation "does not shift" to federal

---

[26] *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017); *see also Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020).

[27] *See, e.g., League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 415 (2006); *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978).

Case 5:20-cv-00830-JKP Document 48 Filed 10/16/20 Page 16 of 19
Case: 20-50793 Document: 00515605296 Page: 14 Date Filed: 10/16/2020

No. 20-50793

courts.[28]

The Texas Legislature has given Governor Abbott the authority to issue executive orders in times of emergencies,[29] and those orders have the force of a law.[30] But a court cannot compel the Governor to issue orders as a means of redressing claims under the Voting Rights Act or the Constitution. Neither the Fifteenth Amendment nor any other provision in the Constitution permits a court to dictate to legislative bodies or executives what laws and regulations they must promulgate.

As the Sixth Circuit has explained:

> Federal Courts do have jurisdiction and power to pass upon the constitutionality of Acts of Congress, but we are not aware of any decision extending this power in Federal Courts to order Congress to enact legislation. To do so would constitute encroachment upon the functions of a legislative body and would violate the time-honored principle of separation of powers of the three great departments of our Government. This principle is equally applicable to the power of a Federal Judge to order a state legislative body to enact legislation. The enactment of legislation is not a ministerial function subject to control by mandamus, prohibition or the injunctive powers of a court.[31]

---

[28] *LULAC*, 548 U.S. at 415.

[29] TEX. GOV. CODE § 418.014.

[30] TEX. GOV. CODE § 418.012 ("Under this chapter, the governor may issue executive orders, proclamations, and regulations and amend or rescind them. Executive orders, proclamations, and regulations have the force and effect of law.").

[31] *Smith & Lee Assoc., Inc. v. City of Taylor*, 102 F.3d 781, 797 (6th Cir. 1996) (quoting *Joseph Skillken & Co. v. City of Toledo*, 528 F.2d 867, 878 (6th Cir.1975), *vacated and remanded sub. nom. Joseph Skilken & Co. v. City of Toledo, Ohio*, 429 U.S. 1068 (1977), *decision adhered to on remand*, 558 F.2d 350 (6th Cir.1977)).

No. 20-50793

In *City of Taylor*, the district court had ordered the City to amend its zoning ordinance to adopt the court's definition of "family."[32] The Sixth Circuit held that "the District Court exceeded its proper scope of authority when it" did so, "remind[ing] district courts that Article III powers are finite."[33]

The Ninth Circuit has held that principles of federalism do not permit federal courts to order relief that would require the Governor of a State to essentially enact legislation.[34] In *M.S. v. Brown*, the Oregon legislature had passed a statute permitting the issuance of driver's cards to individuals who could not prove they were United States citizens,[35] but the voters of that state had exercised their referendum power to reject that legislation, and accordingly, the law had never gone into effect.[36] The plaintiff argued that the referendum was motivated by racial animus and sought relief ordering the Governor of Oregon to issue driver's cards in accordance with the legislation that had been rejected by the voters.[37] The Ninth Circuit affirmed the district court's dismissal of the claims, reasoning "[i]n particular, we have explained that '[p]rinciples of federalism counsel against' awarding 'affirmative injunctive and declaratory relief' that would require state officials to repeal an existing law and enact a new law proposed by plaintiffs."[38]

---

[32] *Id.*

[33] *Id.*

[34] *M.S. v. Brown*, 902 F.3d 1076, 1089 (9th Cir. 2018).

[35] *Id.* at 1086.

[36] *Id.* at 1084.

[37] *Id.* at 1081-82.

[38] *Id.* at 1089 (quoting *Jacobson v. Tahoe Reg'l Plan. Agency*, 566 F.2d 1353, 366 (9th Cir. 1977), *aff'd in part, rev'd in part on other grounds sub nom. Lake Country Estates, Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391 (1979)).

No. 20-50793

An examination of the relief that the Plaintiffs seek in the case before us reveals that in many instances, court-ordered-relief would require the Governor or the Secretary of State to issue an executive order or directive or to take other sweeping affirmative action. If implemented by the district court, many of the directives requested by the Plaintiffs would violate principles of federalism.

In *M.S. v. Brown*, the Ninth Circuit stated in dicta that "federal courts have jurisdiction to order a remedy requiring the enactment of legislation in certain narrow circumstances, such as where fundamental rights are at stake."[39] We do not consider today whether there might be such narrow circumstances and if so, what they might be.

## V

The Plaintiffs' Voting Rights Act claim does not present a political question and is not barred by sovereign immunity. The remaining question is whether relief could be granted by the district court at this time that would redress their alleged injury, were the district court to conclude that there has been a Voting Rights Act violation.

As discussed above, the district court would not have authority to order the Governor or Secretary of State to promulgate regulations or legislation. To the extent that the requests for relief specified in the Complaint would not fall within that category of relief, we are mindful of the Supreme Court's repeated admonishment that "lower federal courts should ordinarily not alter the election rules on the eve of an election."[40]

The Plaintiffs seek to overhaul Texas's voting scheme. Early voting

---

[39] *Id.* at 1087.

[40] *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020).

Case 5:20-cv-00830-JKP   Document 48   Filed 10/16/20   Page 19 of 19
Case: 20-50793      Document: 00515605296     Page: 17     Date Filed: 10/16/2020

No. 20-50793

in Texas commenced October 13, 2020. The changes sought by the Plaintiffs by and large would up-end the process. In large measure, it would be a futile act to remand the Voting Rights Act claim for plenary consideration with regard to the November 2020 election because it would be inappropriate for the district court to grant much of the requested relief with the election ongoing.

We see a possible exception, however, with regard to the November 2020 election. Were the district court to conclude that the exemption from wearing a mask in public places contained in Executive Order GA-29 for poll workers, voters, and others in polling places violated section 2 of the Voting Rights Act, the district court might excise that provision if it concluded that this would redress the injuries the Plaintiffs have alleged. It is at least conceivable that such a remedy would not materially or substantially affect the ongoing election, but that would be a matter for the district court to determine.

We accordingly reverse the district court's judgment in part and remand the Voting Rights Act claim for further proceedings in the district court, consistent with this opinion.

\* \* \*

We AFFIRM the judgment of the district court in part. We REVERSE the district court's judgment with regard to the Voting Rights Act claim and REMAND that claim to the district court.